176 F.3d 27
 Jeffrey GRUNE, Plaintiff-Appellee,
v.
Ramon J. RODRIGUEZ, Chairman of the NYS Division of Parole;
Jack Holloway, Parole Officer at the Mid-State Corr.
Facility; John Pick, Parole Officer at the Mid-State Corr.
Facility, Defendants-Appellants,
Lynn G. Canton, Commissioner of the Parole Board; Barbara
H. Treen, Commissioner of the Parole Board, Defendants.
 Docket No. 96-2788.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 2, 1999.
Decided April 26, 1999.
 
 Martin Hotvet, Assistant Attorney General for the State of New York (Eliot L. Spitzer, Attorney General; Peter H. Schiff, Deputy Solicitor General; Nancy A. Spiegel, Assistant Attorney General, of counsel), for Defendants-Appellants.
 Jeffrey Grune, Schenectady, NY, Pro Se.
 Before: CABRANES and STRAUB, Circuit Judges, and McCURN, District Judge.*
 JOSE A. CABRANES, Circuit Judge:
 
 
 1
 Defendants Ramon J. Rodriguez, Jack Holloway, and John Pick appeal from the September 5, 1996 order of the United States District Court for the Northern District of New York (Lawrence E. Kahn, Judge ), which, inter alia, (1) denied defendants' motion for summary judgment predicated on the defense of qualified immunity, and (2) struck that defense entirely, pursuant to Fed.R.Civ.P. 12(f). We conclude that the district court erred in denying defendants' summary judgment motion as to the two causes of action at issue on this appeal, and accordingly reverse and remand for further appropriate proceedings.
 
 BACKGROUND
 
 2
 Plaintiff Jeffrey Grune filed this action in December 1989, when he was a New York state prisoner at the Mid-State Correctional Facility serving a three to six-year sentence for an arson conviction. Grune's pro se complaint challenged the October 1989 decision of the state Parole Board to deny him parole. In addition to the instant appellants, the complaint named as defendants Parole Board Commissioners Lynn G. Canton and Barbara H. Treen.
 
 
 3
 Grune first alleged that parole officers Pick and Holloway were responsible for errors in preparing a report that was used by the Parole Board in deciding whether to release Grune. Specifically, he stated that the report was authored by Pick and signed by both Pick and Holloway, and that they had committed errors under New York law by relying on oral (rather than written) victim impact statements and by classifying Grune's arson as an offense involving "a weapon and force/physical injury."[1] Although not entirely clear from the complaint as pled, it appears that Grune intended to assert a procedural due process claim against Pick and Holloway for the errors in the probation report.[2]
 
 
 4
 In addition to the above allegations implicating Pick and Holloway, Grune asserted that the Parole Board had violated his rights by denying him parole because of his alcoholism. The record indicates that, after an October 1989 hearing in which Grune participated, defendants Treen and Canton rendered a written decision denying him release, projecting a further 20 to 38 months of incarceration, and ordering him to reappear before the Parole Board after 15 months. The Parole Board explained:
 
 
 5
 Following careful review of your record and personal interview we feel that if released there is a probability that you would not live lawfully and as such pose a risk to the community. While we note excellent institutional adjustment, we base this decision on your underlying alcoholism manifesting itself in 1973 with your first arrest and continuing throughout additional court sanctions and treatment attempts.
 
 
 6
 (emphasis added).[3] Grune's complaint asserted that the Parole Board's denial of parole was impermissibly based on his status as an alcoholic, and thus violated the Due Process Clause, U.S. Const. amend. XIV; the Equal Protection Clause, id.; the Eighth Amendment guarantee against cruel and unusual punishment, id. amend. VIII; and § 504 of the Rehabilitation Act, 29 U.S.C. § 794.[4] Nowhere did the complaint specify any actions taken by defendant Rodriguez, whom it identified as Chairman of the New York Division of Parole.
 
 
 7
 Concurrent to his filing of this action in federal court, Grune brought a parallel administrative appeal, also challenging the Parole Board's October 1989 denial of parole. In a decision dated June 21, 1990, the Parole Board Appeals Unit "[r]eversed" the denial of parole and remanded to the Parole Board panel for further consideration. In particular, the Appeals Unit agreed with Grune that the initial report--on which the Parole Board panel presumably relied--had incorrectly indicated that Grune's offense involved what state law would recognize as a "weapon" and the "use of force." In addition, the Appeals Unit held that the Parole Board panel's reasoning in denying parole had been defective because, inter alia, "the decision appears to rely, in part, upon appellant's status as an alcoholic, as opposed to his record of criminality ... and his history of not benefiting [sic] or lear[n]ing from either prior judicial sanctions or treatment."
 
 
 8
 On remand, the Parole Board again denied Grune's request for parole by a decision dated August 1990. However, based on the errors identified by the Appeals Unit, the Parole Board reduced his projected term of additional incarceration to a period of 18 to 30 months (down from 20 to 38 months). The Parole Board offered the following, revised explanation for its denial of parole--notably omitting any reference to Grune's alcoholism:
 
 
 9
 [T]here is a reasonable probability that you would not live and remain at liberty without violating the law, and your release would be incompatible with the welfare of society. While your entire record was reviewed, this determination is based upon the following factors: Gravity of your instant conviction, Arson 3? , by plea (1987), involving a fire in the residence of a former girlfriend. Prior convictions of disorderly conduct (1975), Reckless Endangerment 1? (1976), Operating Motor Vehicle 1st offense (1979), DWI (1980), Trespass (1983), Trespass (1984), disorderly conduct (1984), CPW (1983) and criminal trespass (1986), indicating continuous involvement with the criminal justice system since 1975. Negative response to past judicial sanctions and correctional influences, including sentences of probation in 1976, 1980 and 1983. Negative recommendation from the sentencing court. Negative recommendation from the office of the Putnam County District Attorney.
 
 
 10
 Grune steadily accrued "good behavior allowance" and accordingly was released in December 1990 after having served two-thirds of his sentence.
 
 PROCEEDINGS RELEVANT TO REVIEW
 
 11
 In September and October 1990, the parties cross-moved for summary judgment on various grounds. By order dated April 13, 1992, the late Judge Con. G. Cholakis denied plaintiff's motion in full, but granted defendants' motion in part, narrowing the scope of Grune's action. In particular, the court dismissed plaintiff's claims against Treen and Canton, on the basis of absolute immunity; plaintiff's request for injunctive relief as moot; plaintiff's due process claim, on the ground that he did not have an absolute right to release; and any claims pleaded by Grune against defendant Rodriguez pursuant to 42 U.S.C. § 1983, because the court determined that the only basis for holding Rodriguez liable would be a theory of respondeat superior, which is not available for § 1983 actions.[5] However, the district court denied as conclusory those portions of defendants' motion that sought summary judgment on the following grounds: (1) that Grune had not alleged a constitutional violation, (2) that the remaining defendants (Rodriguez, Holloway, and Pick) were entitled to qualified immunity, or (3) that the Rehabilitation Act claim had become moot.
 
 
 12
 After a period of discovery, the parties again filed cross-motions for summary judgment in August 1994. The motions were referred to Magistrate Judge Ralph W. Smith, who filed a report on January 25, 1996. The magistrate judge recommended that plaintiff's motion for partial summary judgment--involving only his Rehabilitation Act claim--be denied. The report recommended, however, that defendants' motion be granted insofar as it sought the dismissal of plaintiff's equal protection and Eighth Amendment claims, and denied in all other respects. The magistrate judge recommended that the court allow Grune to proceed to trial on two claims: the " § 1983 claim" against Pick and Holloway, relating to their errors in preparing the October 1989 probation report, and the Rehabilitation Act claim against all remaining defendants. The report noted defendants' argument that plaintiff could not succeed on his Rehabilitation Act claim because he had not demonstrated that he was "otherwise qualified" for release or that he had been denied release "solely" because of his alcoholism; however, the report found that disputed issues of fact precluded the determination of either element as a matter of law. Defendants also argued that they were entitled to qualified immunity because they had not violated any "clearly established" rights of plaintiff. The report concluded that the defense of qualified immunity was not available on these facts because "the law at the time clearly prohibited excluding an individual from a program receiving federal financial assistance solely because of ... a handicap." In addition to recommending the denial of summary judgment on this ground, the magistrate judge recommended "that the defendants not be permitted to assert the defense of qualified immunity."
 
 
 13
 Thereafter, the case was reassigned to Judge Kahn, and all remaining parties filed objections with the court to the magistrate judge's report and recommendation. By order dated September 5, 1996, the district court approved the magistrate judge's report. The order specifically stated, among other things, that defendants' qualified immunity defense "is stricken pursuant to Rule 12(f) of the F.R.C.P." The remaining defendants brought this timely appeal from the September 5, 1996 order.
 
 DISCUSSION
 
 14
 Appellants argue on this appeal that they are immune from suit under the doctrine of qualified immunity because their actions did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known," Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)--either because the alleged conduct did not violate Grune's rights, or because any such rights were not "clearly established." See Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."); accord County of Sacramento v. Lewis, 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998).[6]
 
 I. Appellate Jurisdiction
 
 15
 As a threshold matter, we must consider the scope of our jurisdiction over this interlocutory appeal.[7] Although a district court's denial of a motion for summary judgment is generally a non-appealable collateral order, "[a] limited exception is available for decisions rejecting a defense of qualified immunity." Catone v. Spielmann, 149 F.3d 156, 159 (2d Cir.1998) (citations omitted). Largely because qualified immunity "is an immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (emphasis in original), the Supreme Court has held that the "denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291," id. at 530, 105 S.Ct. 2806. Where the defendant's appeal does not turn on a "purely legal issue," Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), but instead challenges the district court's determination of "evidence sufficiency,"--that is, whether the record demonstrates a disputed issue of fact--appellate jurisdiction will not lie. See id.; see also Behrens v. Pelletier, 516 U.S. 299, 312-13, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). We may consider the defendant's claim of legal error, to the extent we can do so "on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find." Salim v. Proulx, 93 F.3d 86, 90 (2d Cir.1996). We may not, however, "entertain an interlocutory appeal in which a defendant contends that the district court committed an error of law in ruling that the plaintiff's evidence was sufficient to create a jury issue on the facts relevant to the defendant's immunity defense." Id. at 91.
 
 
 16
 Defendants' appeal seeks to present certain claims that are clearly beyond our present jurisdiction. In particular, defendants maintain that the August 1990 denial of parole--which did not mention Grune's alcoholism--establishes that the October 1989 denial did not violate Grune's rights under § 504 of the Rehabilitation Act. Defendants argue that the later denial conclusively demonstrates that the earlier denial was not based "solely" on Grune's alcoholism and that Grune was not "otherwise qualified" for parole, as would be necessary for recovery under § 504 of the Rehabilitation Act. See Doe v. Pfrommer, 148 F.3d 73, 82 (2d Cir.1998) (to prevail on § 504 claim, plaintiff must show, inter alia, that he was "otherwise qualified" for the benefit and that he was denied the benefit "solely by reason" of his disability). The district court considered this argument, however, and concluded that material issues of fact remained, in light of the Parole Board's failure to include reasons other than Grune's alcoholism in its initial, October 1989 denial. Whether or not we would be inclined to agree with the district court, it is clear from established precedent that we lack jurisdiction at this stage to review its conclusion that the record demonstrates a genuine dispute of fact.
 
 
 17
 By contrast, defendants may invoke our jurisdiction to review legal questions, such as whether the conduct at issue violated "clearly established" law, see, e.g., Johnson, 515 U.S. at 318, 115 S.Ct. 2151, or a fortiori whether it violated the law at all, see, e.g., Smith v. Edwards, 175 F.3d 99, 1999 WL 163432, at * 4-6 (2d Cir.1999) (holding that court had jurisdiction to consider defendant's claim on interlocutory appeal that the conduct, as alleged, did not amount to a constitutional violation). Defendants argue in the present case both that their conduct, as alleged by Grune, did not violate the law, and that even if it did, that law was not "clearly established" at the time. We conclude--based on "plaintiff's version" of the facts, Salim, 93 F.3d at 91--that appellants did not violate the law at all, and thus do not consider the question of whether the relevant law was "clearly established."
 
 
 18
 II. Plaintiff's " § 1983" Claim Against Pick and Holloway
 
 
 19
 The district court denied defendants' summary judgment motion to the extent that it sought dismissal of what the court termed "[p]laintiff's § 1983 claim against Pick and Holloway." The court described this cause of action as involving errors in Pick's calculation of Grune's release eligibility in the October 1989 parole report. Although the district court did not identify the underlying federal right that such erroneous calculations would have infringed (thus permitting vindication under § 1983), it appears from Grune's complaint that he intended to assert a due process claim. See note 2 and accompanying text, supra. In any event, no other violation appears colorable on these facts.[8]
 
 
 20
 Defendants argued below that they were entitled to summary judgment on this claim because, inter alia, plaintiff had not adduced facts from which it could be inferred that Pick and Holloway had acted with any degree of fault more culpable than negligence. Plaintiff replied that Pick's interrogatory responses had not attributed the errors to negligence, and thus that it would be improper to draw such an inference. The district court rendered no explicit holding on the question of defendants' level of culpability, instead stating broadly that "questions of fact ... preclude the granting of summary judgment in favor of defendants."
 
 
 21
 We are easily able to conclude--based on the facts asserted by Grune--that defendants are entitled to summary judgment on this claim. Plaintiffs challenging asserted deprivations of due process under 42 U.S.C. § 1983 must demonstrate, inter alia, that the defendant acted with more than mere negligence. See Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ("[T]he Due Process Clause is simply not implicated by a negligent act of an official ....") (emphasis in original); accord Davidson v. Cannon, 474 U.S. 344, 347, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); see also Bryant v. Maffucci, 923 F.2d 979, 984-85 (2d Cir.) (affirming summary judgment for defendants on due process claims because plaintiff "failed, as a matter of law, to adduce sufficient evidence to permit a jury to find that the defendants' actions were more than merely negligent"), cert. denied 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). Rather than carrying his burden of adducing facts that a court might deem sufficient to support a finding that Pick and Holloway acted with more than mere negligence, Grune has improperly attempted to shift to defendants the burden of adducing facts to the contrary. Accordingly, defendants are entitled to summary judgment as to the claim under discussion.
 
 III. Rehabilitation Act Claim
 
 22
 Defendants raise a number of arguments in support of reversing the district court's order with respect to plaintiff's Rehabilitation Act claim. Most persuasively, appellants argue that plaintiff's own description of their behavior would not permit the conclusion that they had violated his rights under the relevant provision of this Act. We agree.
 
 
 23
 Appellants argued in the district court that they had not personally engaged in any conduct prohibited by the Rehabilitation Act. In an affirmation dated September 4, 1994, Grune responded that "Defendants PICK and HOLLOWAY admit to knowing of the reason for denial ('underlying alcoholism') at the time it was rendered, or shortly thereafter, and took no action despite the fact that such a reason is glaringly improper." In addition, Grune argued that defendant Rodriguez was liable for the acts of Pick and Holloway under the doctrine of respondeat superior.
 
 
 24
 Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a). Even under Grune's version of events, Pick and Holloway cannot be said to have "excluded" him, "denied" him benefits, or "subjected [him] to discrimination." At most, they stood by with the knowledge that others--namely, Commissioners Treen and Canton--were perpetrating such ill treatment.[9] But knowing inaction in the face of discrimination perpetrated by others does not itself amount to discrimination--at least where the non-actor does not stand in a supervisory position vis-a-vis the perpetrator.
 
 
 25
 Grune does attempt to assert a species of supervisory liability. He argues that Rodriguez is vicariously liable for the acts of Pick and Holloway under the doctrine of respondeat superior. Cf. Bonner v. Lewis, 857 F.2d 559, 566-67 (9th Cir.1988) (recognizing applicability of respondeat superior liability under § 504). As discussed above, however, we hold that Grune's allegations fail to support a claim against Pick and Holloway. Even assuming that we were inclined to apply respondeat superior liability to Rehabilitation Act claims, Rodriguez's liability under that doctrine could not exceed that of his putative subordinates Pick and Holloway. See Norwalk v. Air-Way Elec. Appliance Corp., 87 F.2d 317, 319 (2d Cir.1937) ("[T]he liability of the master is derived from and is dependent upon the liability of the servant."); accord Rodick v. City of Schenectady, 1 F.3d 1341, 1348 (2d Cir.1993). Grune has not asserted that Rodriguez should be held vicariously liable for the acts of Commissioners Treen and Canton. Even if Grune had so asserted, the record is silent as to whether Rodriguez enjoyed any authority over these Commissioners. For all of these reasons, Grune's version of the facts does not suffice to support Rodriguez's liability under a theory of respondeat superior.
 
 CONCLUSION
 To summarize:
 
 26
 (1) We lack jurisdiction over this appeal to the extent that appellants seek to challenge the district court's determination that the record contained particular issues of fact relevant to appellants' immunity defense.
 
 
 27
 (2) We conclude, however, that even accepting the facts as presented by plaintiff, he has not set forth a valid claim with respect to either of the causes of action at issue on this appeal--namely, the § 1983 claim involving Pick and Holloway's October 1990 probation report and the Rehabilitation Act claim lodged against all three appellants.
 
 
 28
 (3) Accordingly, we reverse the district court's order insofar as it denied defendants' motion for summary judgment, and we remand the cause to the district court for further proceedings consistent with this opinion.[10]
 
 
 
 *
 The Honorable Neal P. McCurn, of the United States District Court for the Northern District of New York, sitting by designation
 
 
 [1]
 This classification resulted in additional points under the New York State Parole Guidelines. These points, in turn, were apparently used in calculating the period of time Grune would have to serve before his release
 
 
 [2]
 Immediately after describing the actions taken by Pick and Holloway, the complaint states that Grune "had been issued a certificate of earned eligibility [for release]" and that this entitlement "creates a protectable liberty interest and invokes Due Process." It seems apparent in context that Grune meant to assert that defendants Pick and Holloway followed a defective procedure in depriving him of a "liberty interest" protected by the Due Process Clause, U.S. Const. amend. XIV
 
 
 [3]
 Although the record on appeal does not include Grune's parole file in its entirety, the earliest reference in the record to Grune's history of alcohol abuse was made by Grune himself at the October 1989 hearing. At that hearing, Commissioner Treen began asking Grune about his alcoholism only in response to Grune's description of the apparently alcohol-induced blackout that has obscured his memory of the offense for which he was incarcerated
 
 
 [4]
 Section 504 of the Rehabilitation Act provides, in pertinent part, as follows:
 No otherwise qualified individual with a disability in the United States, as defined in ... this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
 29 U.S.C. § 794(a).
 
 
 [5]
 See, e.g., Spencer v. Doe, 139 F.3d 107, 111 (2d Cir.1998) (citing Monell v. Department of Soc. Servs., 436 U.S. 658, 692-95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978))
 
 
 [6]
 As a fall-back argument, appellants also assert that the district court erred in striking their qualified immunity defense, thus precluding them from even proceeding to trial on this defense. Our resolution of appellants' primary argument in their favor makes it unnecessary to consider this secondary argument
 
 
 [7]
 Appellants' initial brief asserted, but did not defend, the proposition that we have jurisdiction over this appeal in its entirety. After oral argument, we ordered the parties to brief the issue of appellate jurisdiction. Appellants responded with a supplemental letter brief. Grune filed neither an initial brief nor the requested supplemental brief
 
 
 [8]
 We recognize that Judge Cholakis purported to dismiss Grune's due process claim in his earlier (April 13, 1992) order, on the ground that Grune had demonstrated neither a vested liberty interest nor any cognizable deficiency in process. We need not determine whether Judge Kahn, to whom the case had been reassigned, understood the surviving " § 1983" cause of action to sound in due process--despite the purported dismissal of Grune's due process claim--for we are unable to ascertain any other basis on which it might arguably rest
 
 
 [9]
 Holloway's signature does appear on the document captioned "Parole Board Release Decision Notice." However, as indicated by the caption of the document and corroborated by the record as a whole, the decision was made by the Parole Board--in particular, by Parole Board Commissioners Treen and Canton--not by Holloway or any of his fellow parole officers. Nothing in the record indicates that Holloway performed more than a ministerial act in signing the document
 
 
 [10]
 As a result of the instant decision, the district court will presumably enter judgment in favor of defendants upon remand. Our review in this interlocutory appeal has been limited to those portions of the district court's September 5, 1996 order over which we have appellate jurisdiction. Accordingly, we express no view as to other rulings of the district court that will ultimately be incorporated into the final judgment