202 F.3d 625 (2nd Cir. 2000)
 JOHN MARTINEZ, Plaintiff-Counter-Defendant-Appellee,
v.
TOSANO SIMONETTI AND RICHARD J. ROSA, Defendants-Appellants,
THOMAS McCAULEY, Defendant-Counter-Claimant-Appellant,
NANCY HEINZ-FALJEAN, Esq., Defendant-Cross-Claimant-Counter-Claimant-Appellant,
RICHARD OLIVO, Defendant-Cross-Claimant,
JAMES FULGINITI, WILLIAM HYLAND, RICHARD TRAPANESE and ANTHONY DISCALA, Defendants-Cross-Claimants-Counter-Claimants,
THE NEW YORK CITY POLICE DEPARTMENT, RAYMOND W. KELLY, Police Commissioner, JAMES TAVARES, and RICHARD GUTCH, Defendants, NEW YORK CITY, Defendant-Cross-Defendant.
 Docket No. 99-7154
August Term, 1999
 UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
 Argued: Sep. 29, 1999
Decided: Feb. 4, 2000
 
 Appeal from an order of the United States District Court for the Eastern District of New York (Johnson, J.), denying the motions for summary judgment made on qualified immunity grounds by each of the defendant-appellant police officers in a civil rights action arising out of the arrest and prosecution of plaintiff-appellee, the district court having identified disputed issues precluding a determination that the acts of the officers were objectively reasonable as a matter of law.
 Reversed in part, and dismissed in part.[Copyrighted Material Omitted]
 FAY NG, Office of Corporation Counsel of the City of New York, New York, NY (Michael D. Hess, Corporation Counsel of the City of New York; Pamela Seider Dolgow, of Counsel, on the brief), for Defendants-Appellants.
 BONITA E. ZELMAN, New York, NY (Alexander J. Wulwick, New York, NY, on the brief), for Plaintiff-Appellee.
 Before: PARKER, MESKILL, and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Defendants-Appellants New York City Police Officers Nancy Heinz-Faljean ("Officer Heinz-Faljean"), Thomas McCauley ("Sergeant McCauley"), Richard J. Rosa ("Captain Rosa"), and Tosano Simonetti ("Assistant Chief Simonetti") appeal from an order of the United States District Court for the Eastern District of New York (Johnson, J.), denying their motions for summary judgment on qualified immunity grounds. Plaintiff-Appellee John Martinez alleges that the defendants violated his civil rights in connection with an altercation and arrest that resulted in his prosecution, and subsequent acquittal, on charges of assault in the second degree and resisting arrest.
 
 
 2
 Officer Heinz-Faljean was on the scene when Martinez was badly injured in a brawl with three other officers, and her failure to intervene on his behalf forms the basis of her potential liability. Sergeant McCauley was the patrol supervisor who arrived after the altercation had ended and directed that Martinez be taken to the station house. Captain Rosa was the Duty Captain in charge of conducting a preliminary investigation to decide whether to bring criminal charges against Martinez. Assistant Chief Simonetti was Commanding Officer of the Patrol Bureau, Staten Island. He was called to the station house to confer with Captain Rosa regarding the decision to file the charges against Martinez.
 
 
 3
 After he was tried and acquitted, Martinez filed a 1983 action, naming eleven individual police officers as defendants. He also named as defendants the City of New York, the Police Department of the City of New York, and former Police Commissioner Raymond W. Kelly (collectively, the "City-NYPD"). The district court granted summary judgment in favor of the City-NYPD and three of the defendant officers. With respect to the claims of immunity of the four defendants-appellants, the court adopted the Report and Recommendation of Magistrate Judge Gold, who found that there was a genuine issue of material fact as to Officer Heinz-Faljean's awareness of Martinez' beating and the objective reasonableness of Sergeant McCauley's decision to credit the officers' version of events when he arrived at the scene, Captain Rosa's decision at the station house to bring charges against Martinez, and Assistant Chief Simonetti's concurrence with Captain Rosa's decision. The four remaining defendants did not move for summary judgment.
 
 
 4
 For the reasons that follow, we reverse in part and dismiss in part.
 
 BACKGROUND
 
 5
 Shortly after 1 a.m. on March 19, 1993, four New York City Police Officers responded to a radio dispatcher's report of a domestic dispute at 13 Rathbun Avenue, Staten Island. Officers Heinz-Faljean and Trapanese were the first to arrive; Officers Fulginiti and Hyland arrived as back-up some minutes later.[1] The address corresponded to the apartment of Martinez, then a New York City Police Officer, and his girlfriend, Stacey Sinagra.
 
 
 6
 Shortly after Officers Heinz-Faljean and Trapanese arrived, they separated Martinez and Sinagra; Officer Trapanese accompanied Martinez into the bedroom, while Officer Heinz-Faljean stayed with Sinagra in the kitchen. When Officers Fuliginiti and Hyland arrived, they proceeded to the bedroom as well, and there a physical altercation ensued.
 
 
 7
 Martinez alleges that he tried to tell the officers he was a fellow policeman but that his assertion was met with derision. He further alleges that a fight broke out when Officer Fulginiti arrived in the bedroom and pushed him into Officer Trapanese. He avers that Officers Fulginiti and Trapanese beat him with their fists, and that, after he was handcuffed, Officer Fulginiti hit him repeatedly in the head with a metal flashlight. He further avers that his beating took place with the "knowledge and consent" of Officers Hyland and Heinz-Faljean. (Pl's. Compl. 8.)
 
 
 8
 The officers assert that Martinez was the aggressor. They contend that he was in a "highly agitated state," that he struck Officer Fulginiti in the left side of the face, and that he bit Officer Trapanese's right hand while Trapanese was trying to handcuff him. Whether Officer Heinz-Faljean was a witness to the physical altercation is not clearly established in the present record. According to her affidavit, she "heard some banging noises" and went from the kitchen to the bedroom. She claims that she arrived at the bedroom door as Martinez was being handcuffed. Both Sinagra and Martinez assert, however, that the beating continued after Martinez was handcuffed. Furthermore, Sinagra testified at her deposition that she could witness the beating from her vantage point in the living room, and Martinez testified at his deposition that just before being handcuffed, he could see Sinagra and Officer Heinz-Faljean in the hallway.
 
 
 9
 It is undisputed that Martinez was badly injured in the brawl. He suffered two gashes to his head that together required seven stitches, and an injury to one of his eyes required emergency surgery at the Manhattan Eye, Ear and Throat Hospital on the day following his arrest. The officers allege that they, too, were injured: Officer Fulginiti reported a contusion from a blow to the left cheek, and Officer Trapanese claimed that Martinez bit his right hand.[2]
 
 
 10
 At some point after Martinez had been placed in handcuffs, his father and brother arrived on the scene, as did two more officers on patrol, Officers Olivo and DiScala. The patrol supervisor, Sergeant McCauley, was called to 13 Rathbun Ave. at approximately 1:30 a.m. Officer Hyland met him outside and told him that an arrest had been made and that Officers Trapanese and Fulginiti had been hurt.
 
 
 11
 When Sergeant McCauley entered the apartment, he found Martinez in the bedroom, bleeding. Martinez informed him he was a police officer, and Sergeant McCauley verified that information. When Sergeant McCauley asked the officers what had happened, he was told that Martinez had punched Officer Fulginiti in the face and had bitten Officer Trapanese, and that Martinez was injured while the officers were trying to restrain him. An ambulance was called, and Sergeant McCauley instructed Officers Fulginiti and Trapanese to go to the hospital, Officers Olivo and DiScala to take Martinez to the 123rd Precinct station house, and Officer Heinz-Faljean to take Sinagra to the station house.
 
 
 12
 Once Martinez was taken to the station house, Captain Rosa was summoned. As Duty Captain, it was his responsibility to conduct a preliminary investigation for the NYPD in a case where an off-duty member of the police force had been arrested. Together with Internal Affairs Officer Tavares, Captain Rosa interviewed Sergeant McCauley and Officers Heinz-Faljean, Fulginiti and Hyland. Captain Rosa and Officer Tavares twice interviewed Sinagra, who stated that the officers had assaulted Martinez. They did not, however, interview Martinez himself, who refused to make any statements on the advice of counsel.
 
 
 13
 Based on these interviews, Captain Rosa concluded that Martinez should be suspended from the police force and that criminal charges should be filed. He conferred with then-Assistant Chief Tosano Simonetti, who agreed with his conclusions.[3] An Assistant District Attorney concurred in the decision to arrest Martinez and to file the charges. Captain Rosa wrote a report of the incident that credited the officers' version of the facts, stating that
 
 
 14
 Police Officer Martinez was in a highly agitated state; screaming and cursing at the officers. . . .[He] struck Police Officer Fulginiti in the left side of the face, causing a contusion to the left cheek. Police Officer Trapanese then tried to restrain Officer Martinez. While attempting to handcuff him, Police Officer Trapanese was bitten on the right hand by Officer Martinez.
 
 
 15
 Martinez was held at the 123rd Precinct from approximately 1:30 a.m. to 3:30 a.m., when he was taken to Staten Island Hospital for medical attention. There his head wounds were stitched, and the examining doctor recommended that he see an eye specialist. He was transported back to the precinct in the early morning hours and, at some point later that day, told that he was to be formally charged. Sometime before 3:00 p.m., he was arraigned on charges of assault in the second degree and resisting arrest.
 
 
 16
 The case against Martinez proceeded to trial, and on March 7, 1994, a jury acquitted him of all charges. On June 17, 1994, Martinez filed an action pursuant to 42 U.S.C. 1983, claiming the officers who assaulted and arrested him violated his constitutional rights and asserting state law claims for false arrest, false imprisonment, and malicious prosecution. Martinez later moved to amend his complaint to include state law claims for assault and battery, and the district court granted that motion on February 25, 1998. In addition to naming a number of individual police officers as defendants, the complaint also named the City-NYPD.
 
 
 17
 Defendant Officers Olivo, DiScala, Gutch,[4] Heinz-Faljean, McCauley, Rosa, and Simonetti moved for summary judgment, denying they violated Martinez' constitutional rights and claiming they were entitled to qualified immunity. The City-NYPD moved for summary judgment as to the claims against it. The matter was referred to Magistrate Judge Gold. The magistrate judge, in a Report and Recommendation dated December 3, 1998, recommended summary judgment in favor of the Defendant City-NYPD, having found 1) that the Police Department is not a suable entity under New York law[5] and 2) that Martinez had failed to show how a municipal policy or practice was the cause of his injuries.[6] The magistrate judge also recommended summary judgment in favor of Defendant Officers Olivo, DiScala, and Gutch, having found that their involvement in Martinez' alleged assault and the decision to arrest him was de minimis.
 
 
 18
 With respect to the other four defendant officers, however, the magistrate judge recommended that summary judgment be denied. In the case of Officer Heinz-Faljean, whose liability turns on whether her failure to intervene on Martinez' behalf during the alleged beating was objectively reasonable, the magistrate judge found that a genuine issue of material fact precluded judgment as a matter of law. The magistrate judge reasoned that while Officer Heinz-Faljean stated only that she "heard some banging noises," and then proceeded to the bedroom where she saw Martinez being handcuffed, there was other evidence indicating that Officer Fulginiti struck Martinez after he was handcuffed and that Sinagra saw the beating from her vantage point. The magistrate judge concluded that this conflicting evidence created a factual question of whether Martinez was beaten in Officer Heinz-Faljean's presence.
 
 
 19
 In the case of Sergeant McCauley, Captain Rosa, and Assistant Chief Simonetti, who were named in the claims for constitutional and state law violations arising out of false arrest, false imprisonment, and malicious prosecution, the magistrate judge found that a rational juror could decide that it was "not objectively reasonable for these defendants to conclude that plaintiff had committed a crime." With respect to Sergeant McCauley, the magistrate judge found troublesome his reliance on the officers' version of the facts when he arrived on the scene. The magistrate judge noted that Sergeant McCauley had the opportunity to speak with Martinez, who told him he was a police officer and whom he could see was bleeding. The magistrate judge further noted that despite discerning the disparity between their respective injuries, Sergeant McCauley ordered the officers to get treatment at the hospital while sending Martinez to the precinct for booking.
 
 
 20
 With respect to the decision of Captain Rosa and Assistant Chief Simonetti to allow criminal charges to go forward, the magistrate judge found that their failure to conduct an independent examination of the physical evidence that "would have corroborated [Martinez'] version of events and undermined the credibility of the version put forward by the arresting officers," precluded a finding of objective reasonableness. The magistrate judge especially noted "the lack of bite marks on Trapanese's hand, the absence of a bruise indicating a punch on Fulginiti's face, and the extremely serious injuries to plaintiff's head and eye," alleged by Martinez, and the two interviews in which Sinagra stated that Martinez had been assaulted. Accordingly, the magistrate judge recommended that the motions for summary judgment made by Captain Rosa and Assistant Chief Simonetti be denied.
 
 
 21
 In an Order dated January 4, 1999, the District Court adopted the magistrate judge's recommendations, which included the denials of summary judgment to Officer Heinz-Faljean, Sergeant McCauley, Captain Rosa, and Assistant Chief Simonetti, appellants here.
 
 DISCUSSION
 I. Principles of Appellate Review
 
 22
 Where we have jurisdiction over a district court's denial of summary judgment on qualified immunity grounds, our review is de novo. See Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1996). Not every such denial is an appealable final order, however. "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. 1291." Mitchell v. Forsyth, 472 U.S. 511, 530 (1985) (emphasis added); see Kaluczky v. City of White Plains, 57 F.3d 202, 206 (2d Cir. 1995).
 
 
 23
 In the qualified immunity context, purely legal questions may include, inter alia, whether plaintiffs have asserted a violation of a federally protected right in the first instance, see X-Men Security, Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999), whether that right was clearly established at the time of the challenged conduct, see id., and whether the facts as alleged demonstrate the objective reasonableness of the public official's conduct, see Tierney, 133 F.3d at 194 (issue of whether defendants acted reasonably should be determined by the court). See also Lennon v. Miller, 66 F.3d 416, 422 (2d Cir. 1995) (whether objectively reasonable for officers to believe they did not violate plaintiff's rights is purely legal question for the court).
 
 
 24
 By contrast, we have recently said that "[d]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable . . . if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred. . . ." Smith v. Edwards, 175 F.3d 99, 104 (2d Cir. 1999) (internal quotation omitted). See also Grune v. Rodriguez, 176 F.3d 27, 32 (2d Cir. 1999) (no appellate jurisdiction where defendant challenges trial court's determination that the record shows a disputed issue of fact); Salim v. Proulx, 93 F.3d 86, 91 (2d Cir. 1996) (appeal impermissible where defendant contends district court committed error in finding plaintiff's evidence sufficient to create a jury issue on facts relevant to immunity defense); Genas v. New York Dep't of Correctional Servs., 75 F.3d 825, 830 (2d Cir. 1996) (distinguishing appealable denials of qualified immunity claims from non-appealable ones).
 
 
 25
 Applying these principles, we find that we have jurisdiction to review the district court's denial of summary judgment with respect to the qualified immunity defenses of Sergeant McCauley, Captain Rosa, and Assistant Chief Simonetti, since our inquiry as to these defendants turns on an issue of law -- whether the district court erred in its finding of objective unreasonableness, see Tierney, 133 F.3d at 194. We find, however, that because "immediate appeal is not permitted if the district court's denial of summary judgment for qualified immunity rests on a finding that there were material facts in dispute," Genas, 75 F.3d at 830, we do not have jurisdiction to hear Officer Heinz-Faljean's appeal.
 
 
 26
 II. Lack of Jurisdiction over Officer Heinz-Faljean's Appeal
 
 
 27
 The essence of Officer Heinz-Faljean's argument on appeal is that the trial court erred in concluding that the evidence before it presented an unresolved issue of material fact. However, "[e]ven where the lower court rules that material disputes of fact preclude summary judgment on qualified immunity, we may still exercise interlocutory jurisdiction if the defendant . . . contends that [she] is entitled to qualified immunity even under plaintiff's version of the facts." Tierney, 133 F.3d at 194. Officer Heinz-Faljean does not frame her argument in these allowable terms but instead contends that
 
 
 28
 [f]or plaintiff to succeed in [a failure to intervene] claim, he must come forward with evidence that Officer Heinz-Faljean had the opportunity after observing the other officers hitting plaintiff to intervene. . . . There is no evidence in the record indicating that Faljean heard or saw the assault. ... In sum, no evidence was submitted in opposition to Faljean's motion for summary judgment indicating that it was objectively unreasonable for Officer Faljean to believe that her non-intervention would result in plaintiff's alleged assault.
 
 
 29
 Martinez' failure to adduce direct evidence that Officer Heinz-Faljean observed the assault on Martinez and failed to intervene, in response to Officer Heinz-Faljean's summary judgment motion, does not foreclose his claim. The district court analyzed the evidence already in the record and found, based on the deposition testimony of Sinagra and Martinez, that a reasonable juror might conclude that Officer Heinz-Faljean could see what was happening in the bedroom at 13 Rathbun Avenue. The Supreme Court has held that where the district court properly concludes that the record on summary judgment raises a genuine issue of fact concerning an officer's involvement in an alleged beating, the order of the district court adopting that conclusion is not appealable. See Johnson v. Jones, 515 U.S. 304, 313 (1995). We are of the opinion that just such an order is presented to us here.
 
 
 30
 Officer Heinz-Faljean's argument is similar to the one the defending officers in Johnson tried to make. There, three of five allegedly offending police officers argued that "whatever evidence [the plaintiff] might have about the other two officers, he could point to no evidence that these three had beaten him or had been present while others did so." Id. at 307. The plaintiff's evidence consisted in part of the officers' depositions, in which they admitted they were present at the arrest and in or near the booking room when the plaintiff was there. See id. at 307-08. The district court held that there was "sufficient circumstantial evidence supporting [the plaintiff's] theory of the case." Id. at 308. On appeal, the Seventh Circuit held that it lacked appellate jurisdiction, and the Supreme Court granted certiorari to resolve a split among the Courts of Appeals. See id. (describing circuit split and citing Second Circuit as among those jurisdictions within which no appeal would be taken where "evidence insufficiency" alleged).
 
 
 31
 The Court affirmed, holding that where the district court concludes that "the summary judgment record . . . raise[s] a genuine issue of fact concerning petitioners' involvement in the alleged beating of respondent" the summary judgment order is not appealable. Id. at 313. The Court based its decision on considerations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources. See id. at 317.
 
 
 32
 While claims of immunity are "sometimes practically intertwined with the merits," id. at 314, the collateral order doctrine, permitting immediate appellate review of qualified immunity issues, nonetheless requires that a distinction be made between legal-based and fact-based appeals. Here, if Officer Heinz-Faljean had argued that, even taking as true the circumstantial evidence that she was aware of plaintiff's beating, she was entitled to a finding of objective reasonableness as a matter of law, her appeal could go forward. She grounds her argument instead on the alleged insufficiency of the evidence to show her awareness of Martinez' plight. As such, she appeals "a portion of a district court's summary judgment order that, though entered in a 'qualified immunity' case, determines only a question of 'evidence sufficiency,' i.e., which facts a party may, or may not, be able to prove at trial." Id. at 313. Accordingly, the trial court's order denying Officer Heinz-Faljean's motion for summary judgment is not a "final order" for purposes of appellate review.
 
 
 33
 III. The Supervisory Officers' Qualified Immunity Defense
 
 
 34
 The doctrine of qualified immunity entitles public officials to freedom from suit for acts undertaken in their official capacity if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." Weyant v. Okst, 101 F.3d 845, 857 (2d Cir. 1996). Without a doubt, the right not to be arrested without probable cause is clearly established. See Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997); Cook v. Sheldon, 41 F.3d 73, 78 (2d Cir. 1994); Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987). Therefore, with respect to Sergeant McCauley, Captain Rosa, and Assistant Chief Simonetti -- whose decisions to detain and charge Martinez in the early morning hours of March 19, 1993 gave rise to all his claims against them -- we are called upon to review the objective reasonableness of these officers' probable cause determinations.
 
 
 35
 With respect to qualified immunity, the Supreme Court has recently reminded us that "the appropriate question is the objective inquiry of whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information the officer[ ] possessed." Wilson v. Layne, 526 U.S. 603,119 S. Ct. 1692, 1700 (1999). Lawful arrest, i.e., arrest pursuant to probable cause, requires the arresting officer to have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (internal quotation omitted). Moreover, "it is wellestablished that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." Miloslavsky v. AES Eng'g Soc'y, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993). Finally, we have said that in the context of a qualified immunity defense to an allegation of false arrest, the defending officer need only show "arguable" probable cause. See Lee, 136 F.3d at 103. See also Robison, 821 F.2d at 921 (qualified immunity is warranted if officers of reasonable competence could disagree on whether the probable cause test was met). With these legal standards before us, we turn to the dispositive question of whether the defendants' determination that probable cause existed to detain Martinez was objectively reasonable.
 
 
 36
 In undertaking this inquiry, we bear in mind that "[q]ualified immunity serves important interests in our political system." Sound Aircraft Servs., Inc. v. Town of East Hampton, 192 F.3d 329, 333 (2d Cir. 1999). The defense of qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits. See Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982). We also remain mindful that "in qualified immunity cases, we are not concerned with the correctness of the defendants' conduct, but rather the 'objective reasonableness' of their chosen course of action given the circumstances confronting them at the scene." Lennon, 66 F.3d at 421.
 
 
 37
 We hold that the decisions to detain and criminally charge Martinez, made by the three supervisory officers charged here with false arrest, false imprisonment, and malicious prosecution, were objectively reasonable under the circumstances. We have previously held that police officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed. See Singer, 63 F.3d at 119. They are also entitled to rely on the allegations of fellow police officers. See Bernard v. United States, 25 F.3d 98, 102-03 (2d Cir. 1994).
 
 
 38
 The accounts Sergeant McCauley relied on when he arrived at 13 Rathbun Avenue were those of Officers Fulginiti and Trapanese, who claim to be the victims here. The district court, in denying Sergeant McCauley's motion for summary judgment, incorrectly focused on his decision to send the arresting officers to the hospital, while sending Martinez to the station house for booking. This focus was based on the disparity between the apparently slight injuries suffered by the officers and Martinez' more obvious injuries. In ruling on the motion, the magistrate judge stated that Sergeant McCauley sent two "uninjured" officers to the hospital and cited the defendant officers' examining physician's report, which casts doubt upon the existence of their alleged injuries. It was error for the district court to rely upon that evidence in deciding that Sergeant McCauley had acted unreasonably. In evaluating the probable cause determination, "we consider the facts available to the officer at the time of the arrest." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) (citing Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996)).
 
 
 39
 When Sergeant McCauley arrived at 13 Rathbun Avenue, he was told by all officers present that Martinez was the aggressor, was injured as officers attempted to subdue him, and that Martinez had already been arrested. That Martinez was severely injured is not inconsistent with the officers' account that he was resisting arrest, nor does it undermine a conclusion that he committed a crime. Moreover, it is immaterial to Martinez' claim of false arrest that the arresting officers were sent to the hospital while Martinez was first sent to the station house; the issue pertinent to Martinez' claim is whether there were reasonable grounds on which to detain him, not whether it was appropriate to send the other officers to the hospital. We conclude that reasonably competent officers in Sergeant McCauley's position would, at the least, disagree about the probable cause determination under these circumstances. Because summary judgment on the basis of qualified immunity is appropriate when "the only conclusion a rational jury could reach is that reasonably competent police officers could under the circumstances disagree about the legality of the arrest," id. (citing Lennon, 66 F.3d at 421), we find that Sergeant McCauley is immune from suit in this action.
 
 
 40
 Furthermore, we think that it was error for the trial court to conclude that, once at the station house, Captain Rosa and Assistant Chief Simonetti had a duty to conduct an independent investigation of the physical evidence before deciding to charge Martinez. It is not unreasonable for police officers to rely on the accounts provided by other officers at the scene, even when confronted with conflicting accounts. See id. (holding that arresting officer was entitled to rely on version of altercation given by fellow officer, despite plaintiff's protestations of innocence). Here, Captain Rosa and Assistant Chief Simonetti had a reasonable basis for making the probable cause determination; the version of events as narrated by the officers present at the scene was not clearly implausible, and they had no reason to question the officers' veracity. See id.
 
 
 41
 Captain Rosa heard consistent versions of the events from at least three eyewitnesses, who said that Martinez punched one officer and bit another, while only one eyewitness, Sinagra, provided a different version of events. While the magistrate judge emphasized that "Sinagra's prompt assertion that plaintiff was assaulted" should have aroused Captain Rosa's suspicions, we note that he undertook to interview Sinagra twice, suggesting that he took her story seriously and made every attempt to weigh it in the balance. We also emphasize that Captain Rosa was deprived of the opportunity to speak with Martinez, who declined to make statements at the 123rd Precinct.
 
 
 42
 We have said that a police officer "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Id. We have also noted that making the probable cause determination does not require or allow police officers "to sit as prosecutor, judge, or jury." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989) (stating that it is the factfinder who ultimately decides whether the defendant's story holds up). In that vein, we also take note that Captain Rosa, together with Assistant Chief Simonetti, consulted with an Assistant District Attorney, who concurred with the propriety of bringing charges based on the evidence at hand.
 
 
 43
 Assistant Chief Simonetti was the supervisory officer furthest removed from the events at 13 Rathbun Avenue, having been called to the station house some hours after Martinez was brought in. Because his role was limited to approving the decision to file charges, we question whether Assistant Chief Simonetti even had the kind of personal involvement in Martinez' case that is required to sustain an action for damages under 1983. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986). In any event, since we deem his behavior objectively reasonable with respect to the arrestee, it is not necessary to decide that question.
 
 
 44
 Given the circumstances at 13 Rathbun Avenue and the preliminary investigation undertaken at the 123rd Precinct, we cannot say that the conduct of these three supervisory officers was objectively unreasonable. We have not adopted a legal standard that would require supervisory officers to conduct an independent evidentiary investigation before authorizing charges against an arrestee whom all arresting officers have agreed was violent in resisting arrest. Furthermore, we are confident that competent officers standing in the place of Sergeant McCauley, of Captain Rosa or of Assistant Chief Simonetti would, at the very least, disagree about whether probable cause was lacking in these circumstances. See Robison, 821 F.2d at 921. We therefore find that the district court erred in concluding that a rational jury could fail to find their behavior objectively reasonable; accordingly, Sergeant McCauley, Captain Rosa and Assistant Chief Simonetti are entitled to immunity from suit in this action. Because the federal claims against them must be dismissed, we also direct dismissal of the supplemental state law claims for false arrest, false imprisonment, and malicious prosecution, pursuant to 28 U.S.C. 1367(c)(3). See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). See also Smith, 175 F.3d at 107; Tierney, 133 F.3d at 199; Salim, 93 F.3d at 92; Lennon, 66 F.3d at 426.
 
 CONCLUSION
 
 45
 For the foregoing reasons, we dismiss Officer Heinz-Faljean's appeal for lack of jurisdiction. We reverse the order of the district court denying the motions of Sergeant McCauley, Captain Rosa and Assistant Chief Simonetti for summary judgment and direct the court to enter an order of summary judgment in their favor dismissing both the 1983 and supplemental state law claims against them.
 
 
 
 Notes:
 
 
 [1]
 Officer Heinz-Faljean is the only officer of the four who originally responded to the call who has moved for summary judgment on qualified immunity grounds.
 
 
 [2]
 All witnesses agree that Martinez emerged bleeding and obviously injured from the fray. The extent to which the officers' injuries were patent is in dispute.
 
 
 [3]
 Since the time of these events, Simonetti has been promoted to First Deputy Commissioner of the NYPD.
 
 
 [4]
 Officer Gutch processed Martinez' arrest at the 123rd Precinct and escorted him to central booking.
 
 
 [5]
 The magistrate judge cited New York City Charter, Ch. 17, 396, which provides that suits against the City are to be brought in the name of the City of New York and not any of its agencies.
 
 
 [6]
 Specifically, the magistrate judge found that injuries from excessive force of the type Martinez described did not result from poor judgment that could have been corrected through proper training but rather allegedly "resulted from a deliberate beating by a band of rogue officers." Because Police Commissioner Kelly was sued in his official capacity, his liability would be determined in the same manner as the municipality, and he was granted summary judgment.