**Thomas C. PARSONS, Plaintiff,**

v.

**David W. POND, et al., Defendants.**

**No. Civ.A. 3:97CV2665JCH.**

United States District Court, D. Connecticut.

Oct. 24, 2000.

Thomas C. Parsons, New Haven, CT, pro se.

David X. Sullivan, U.S. Attorney's Office, New Haven, CT, for David W. Pond, Paul M. Visokay, Maria Rodriguez McBride.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
### [DKT. NO. 26]

HALL, District Judge.

Plaintiff Thomas C. Parsons brings this action for money damages against the defendants, David W. Pond, Paul M. Visokay, and Maria Rodriguez McBride, alleging various violations of his constitutional rights as well as several state law claims. The defendants, who are federal probation officers, move pursuant to Fed.R.Civ.P. 56(c) for summary judgment in their favor on Parsons's complaint on the ground of qualified immunity. For the reasons that follow, the defendants' Motion for Summary Judgment [Dkt. No. 26] is GRANTED.

## I. BACKGROUND

At the outset, it is important to note that the Court "must construe pro se pleadings broadly, and interpret them 'to raise the strongest arguments they suggest.'" *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.2000) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996)). "Indeed, courts may look to submissions beyond the complaint to determine what claims are presented by an uncounseled party." *Boguslavsky v. Kaplan*, 159 F.3d 715, 719 (2d Cir.1998) (citations omitted).

Parsons's complaint indicates that he brings this action pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), as well as under 42 U.S.C. § 1982. *See* Complaint at ¶ 2. Parsons has alleged causes of action against three defendants who at all relevant times were federal probation officers. *See id.* at ¶ 7. "An action brought pursuant to 42 U.S.C. § 1983 cannot lie against federal officers." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 n. 4 (1991). *Bivens* claims for money damages may, however, be brought against federal officers in their individual capacities. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510

(2d Cir.1994). As such, the court will interpret Parsons's federal constitutional claims against the defendants to be alleged under *Bivens* only.[2]

The court construes Count 1 of Parsons's complaint as a *Bivens* claim for the violation of his Fifth Amendment procedural and substantive due process rights, through the defendants' imposition of an employment restriction as a condition of his supervised release, thereby modifying the conditions of Parsons's probation without notice or a hearing, as required under 18 U.S.C. § 3563(c) and Fed.R.Crim.P. 32.1(b). The court construes Count 2 of Parsons's complaint as a *Bivens* claim alleging that the defendants violated Parsons's constitutional right to due process and to privacy by forwarding testimony from a criminal trial in which witnesses testified about Parsons to the FAA. Count 3 appears to allege a *Bivens* claim for a violation of Parsons's due process rights through the defendants' malicious and intentional interference with Parsons's ability to secure employment by furnishing the FAA with material in order to delay the medical recertification required to renew Parsons's pilot's license, thereby disabling Parsons from accepting an offer of employment as a pilot. Count 5 alleges that the defendants imposed an illegal fine on Parsons by requiring him to attend weekly sessions with Dr. Jeremy August, a licensed psychiatrist whom Parsons was seeing pursuant to the court-ordered conditions of his supervised release. Counts 4, 6, and 7 allege state law causes of action, including intentional infliction of emotional

distress, fraudulent misrepresentation, and tortious interference with employment.[3]

## II. STANDARD

Summary judgment is only appropriate when there is no genuine issue as to a material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000) (citing *Fagan v. N.Y. State Elec. & Gas Corp.*, 186 F.3d 127, 132 (2d Cir. 1999)). The burden of showing that no genuine factual dispute exists rests upon the moving party, *see Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994)), and in assessing the record to determine if such issues do exist, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir. 1994). "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton*, 202 F.3d at 134 (citations omitted). When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *See Sologub v. City of N.Y.*, 202 F.3d 175, 178 (2d Cir.2000).

**2.** Despite the fact that actions under 42 U.S.C. § 1983 cannot lie against federal officers, the Supreme Court has recently reaffirmed that "the qualified immunity analysis is identical under" section 1983 and *Bivens* causes of action. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *see also Jones v. N.Y. State Div. of Military & Naval Affairs*, 166 F.3d 45, 51 (2d Cir.1999) (citing *Butz v. Economou*, 438 U.S. 478, 500, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)). Indeed, " '*Bivens* actions are not significantly dissimilar to claims brought under §§ 1981 and 1983 in terms of the interests

being protected, the relief which may be granted, and the defenses which may be asserted.' " *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir.1995) (citing *Chin v. Bowen*, 833 F.2d 21, 23 (2d Cir.1987)). "Because the two actions share the same 'practicalities of litigation,' ..., federal courts have typically incorporated § 1983 law into *Bivens* actions." *Id.* (citations omitted).

**3.** Count 4 of Parsons's complaint, for "Deceit and Misrepresentation," is mislabeled "Third Count." *See* Complaint (Dkt. No. 1) at 9.

Although defendant bears the burden of showing that no genuine factual dispute exists to prevail on summary judgment, the plaintiff must make a sufficient showing on the essential elements of his case for which he bears the burden of proof at trial. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 884, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As the Supreme Court stated in *Lujan,* "[w]here no such showing is made, '[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which she has the burden of proof.'" 497 U.S. at 884, 110 S.Ct. 3177 (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548). Therefore, when, as in this case, "a defendant moving for summary judgment has pointed to the absence of evidence to support an essential element on which the plaintiff has the burden of proof, the plaintiff, in order to avoid summary judgment, must show the presence of a genuine issue by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in his favor, to establish the existence of that element at trial." *Grain Traders, Inc. v. Citibank, N.A.,* 160 F.3d 97, 100 (2d Cir. 1998) (citations omitted).

## III. FACTS

On September 24, 1992, the plaintiff Thomas C. Parsons appeared before the United States District Court for the District of Connecticut and pled guilty to one count of violating 18 U.S.C. § 1001 by making a false statement on a Federal Aviation Administration ("FAA") medical application form for a class 3 medical certificate required to obtain a pilot's license and to one count of making a false statement in connection with the purchase of a firearm in violation of 18 U.S.C. § 922(a)(6). Both false statement charges arose from Parsons's failure to reveal a prior criminal conviction.

On December 7, 1992, the district court sentenced Parsons to, *inter alia,* twelve months incarceration and three years of supervised release. The conditions of Parsons's supervised release included the following provisions: "As directed by the probation officer, you shall notify third parties of risks that may be occasioned by your criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm your compliance with such notification requirement;" "Defendant shall obtain and maintain full time employment;" and "Defendant shall obtain such psychological and psychiatric counseling and therapy under the guidance and supervision of U.S. Probation Officer." Local Rule 9(c)1 Statement (Dkt. No. 28), Ex. F. Parsons's conditions of supervised release did not include a so-called "occupational restriction," as permitted at the sentencing judge's discretion pursuant to 18 U.S.C. §§ 3563(b)(5) & § 3583(d).[4]

Prior to Parsons's release from the Raybrook Federal Correctional Institution, Visokay met with Parsons and Parsons expressed his desire to continue to pursue a career as a pilot. Visokay encouraged Parsons to pursue this career interest.

Parsons began his term of supervised release on November 26, 1993. Pond was assigned to supervise Parsons's release for a period from May 1994 to March 1995. Visokay was Pond's supervisor during this

---

**4.** 18 U.S.C. § 3563(b)(5) provides:

The court may provide, as further conditions of a sentence of probation, to the extent that such conditions are reasonably related to the factors set forth in section 3553(a)(1) and (a)(2) and to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2), that the defendant—... refrain, in the case of an individual, from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances....

time, and McBride has been at all relevant times the Chief Probation Officer for the District of Connecticut.

As part of the conditions of Parsons's supervised release, Parsons was also required to attend regular meetings with Dr. Jeremy August, a licensed psychiatrist, at Parsons's own expense. Parsons was released from his term of supervised release in November 1996.

Don Wood of the FAA's Security Division was the contact person for the FAA concerning medical recertification for Parsons's pilot's license. At some time during Pond's supervision of Parsons's release, Pond spoke with Wood regarding the information the FAA possessed to consider Parsons's medical recertification. In a separate proceeding, two former associates of Parsons, Angelina DiDominico and Lisa Valentovish, testified in a criminal trial of DiDominico (Dkt. No. 3:91–cr–14 (JAC)) in October 1991. This testimony included discussions of physical and emotional abuse each received from Parsons during the course of their relationships with him. Parsons was not a party to this court proceeding and was not called to testify as a witness. On December 20, 1994, Pond spoke to Wood regarding this testimony and, on December 21 and 23, 1994, Pond faxed to Wood portions of the transcript of DiDominico's trial containing this testimony regarding Parsons.[5]

Prior to the alleged actions by the defendants at issue in this case, Parsons applied for and obtained a pilot's license from the FAA, and at no time has it been revoked by the FAA. For all relevant time periods, Parsons obtained medical certification as required to maintain and renew his pilot's license.

## IV. DISCUSSION

### A. Qualified Immunity Standard and Order of Analysis

"Most executive officials receive qualified immunity, whereby 'government officials performing discretionary functions . . . are shielded from liability [for civil damages] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

---

5. In Parsons's Opposition to Defendants' Motion for Summary Judgment, Parsons indicated that he "sought to obtain an affidavit from Don Wood who is no longer employed at the FAA." Dkt. No. 30 at 7. At the end of his Opposition, Parsons indicated that, "[i]f the Court is inclined to grant Defendants' Motion for Summary Judgment, Plaintiff requests under Rule 56(f) of the Federal Rules of Civil Procedure that the court refuse the application for judgment or order a continuance to permit affidavits to be obtained and depositions to be taken or discovery to be had or may make such other order as is just." Id. at 25. On September 27, 2000, the court issued an order granting "an extension until October 18, 2000, in order to allow him to obtain an affidavit from Mr. Wood, pursuant to Rule 56(f)." Dkt. No. 33 at 1. The court noted, however, that "[n]o further replies will be accepted and no further extensions will be granted." Id. at 2.

In Parsons' Supplemental Briefing in Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 34], filed October 18, 2000, Parsons informed the court that he "has been unable to make contact with the correct Don Wood to obtain an affidavit."

Dkt. No. 34 at 1. Parsons indicated that he may have identified the correct contact information for Don Wood and, "if the Court is inclined to grant Defendants' Motion for Summary Judgment, then Plaintiff requests additional time to offer support of Plaintiff's position that the interaction between David W. Pond and Don Wood did not occur as Defendants portray." Id. at 2. Parsons concludes that, "[i]f it is legally significant for the purposes of the Court's deciding the Defendants' Motion for Summary Judgment, whether Don Wood specifically requested the information forwarded or whether David W. Pond in fact initiated the exchange and guided the interaction, a material fact is in dispute." Id. at 3.

Parsons's Supplemental Opposition makes clear that the affidavit Parsons hopes to obtain from Don Wood will not, in fact, advance the court's analysis of the instant motion. For purposes of deciding this motion, in the analysis below, the court will assume that defendant Pond initiated his contact with, and submissions to, Don Wood at the FAA. This is not a material fact in dispute, and, as such, Parsons's request for additional time is denied.

person would have known.'"[6] *Scotto v. Almenas,* 143 F.3d 105, 110 (2d Cir.1998) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), and citing *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *see also X–Men Sec., Inc. v. Pataki,* 196 F.3d 56, 65 (2d Cir. 1999) (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727). "Qualified immunity is an affirmative defense. The burden rests on the defendants to raise the defense in their answer and to establish the defense on a motion for summary judgment or at trial." *Lee v. Sandberg,* 136 F.3d 94, 101 (2d Cir.1997) (citation omitted).

■ The Supreme Court has recently clarified the analysis which courts must employ to resolve a claimed defense of qualified immunity. In *Wilson v. Layne,* the Court held:

A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.... This order of procedure is designed to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.... Deciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public.

526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (citations and internal quotation marks omitted). Thus, "a government official sued in his individual capacity ... is entitled to qualified immunity in any of three circumstances: (1) if the conduct attributed to him is not prohibited by federal law ...; or (2) where that conduct is so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time of the conduct ...; or (3) if the defendant's action was 'objective[ly] legal[ly] reasonable[ ] ... in light of the legal rules that were clearly established at the time it was taken.'" *X–Men,* 196 F.3d at 65–66 (citations omitted). "These three issues should be approached in sequence, for if the second is resolved favorably to the official, the third becomes moot; a favorable resolution of the first moots both the second and the third." *Id.* at 66.

■ Previously, courts had focused on the second prong of the *Harlow* test—whether a constitutional right alleged to have been violated was clearly established at the time of the defendant's challenged actions—but the Supreme Court now requires that courts engage initially in "'some determination about the state of constitutional law at the time the officer acted.'" *Id.* (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)). Recent Supreme Court rulings, however, now make clear that "[a] court evaluating a claim of qualified immunity must first determine whether the plaintiff has al-

**6.** In a prior ruling on one of the motions to dismiss filed by the defendants, the court found that it could not find absolute immunity on the record before it. *See* Ruling on March 30, 1999 (Dkt. No. 12). The court noted that "[t]he court expresses no opinion as to whether defendants might be entitled to absolute immunity at the summary judgment stage, nor does the court express any opinion as to whether defendants' actions might alternatively be protected by the doctrine of qualified immunity." *Id.* at 3 n. 3. The court now has before it undisputed information that the defendants undertook the actions that Parsons

challenges with the *ex post facto* endorsement of the judge. *See* Pond Aff. (Dkt. No. 29) at ¶ 15; Local Rule 9(c)1 Statement (Dkt. No. 28) at ¶ 29. If this approval was provided before the defendants undertook the actions at issue in this case, the defendants would qualify for absolute immunity for their actions. *See Scotto v. Almenas,* 143 F.3d 105, 112 (2d Cir.1998). However, because the court decides the defendants' motion in their favor on the ground of qualified immunity, the court does not reach the issue of whether the defendants would be entitled to absolute immunity on this record.

leged the deprivation of an actual constitutional right at all.... In the event that this threshold determination reveals a possible constitutional violation, [a] qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Wilkinson v. Russell,* 182 F.3d 89, 102–03 (2d Cir.1999) (citations and internal quotation marks omitted).[7]

■ Under the second step of the *Wilson* qualified immunity analysis, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson,* 526 U.S. at 615, 119 S.Ct. 1692 (citing *Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. 3034). "[W]hat 'clearly established' means in this context depends largely 'upon the level of generality at which the relevant 'legal rule' is to be established.'" *Id.* at 614, 119 S.Ct. 1692 (quoting *Anderson v. Creighton,* 483 U.S. at 639, 107 S.Ct. 3034). "A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's posi-

tion should know about the constitutionality of the conduct. The unlawfulness must be apparent." *McCullough v. Wyandanch Union Free Sch. Dist.,* 187 F.3d 272, 278 (2d Cir.1999) (citation omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that 'in the light of pre-existing law the unlawfulness must be apparent.'" *Lauro v. Charles,* 219 F.3d 202, 214 (2d Cir.2000) (quoting *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. 3034). The Second Circuit uses "three factors to determine whether a given right is 'clearly established.' First, whether it is 'defined with reasonable specificity;' second, whether 'the decisional law of the Supreme Court or the appropriate circuit court has clearly established the right;' third, 'whether in light of preexisting law the unlawfulness of the defendant official's actions is apparent.'" *Charles W. v. Maul,* 214 F.3d 350, 360 (2d Cir.2000) (quoting *Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989)).

■ As to the third prong of the *Wilson* analysis of whether a defendant is entitled to qualified immunity, "[t]he objective reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions."[8]

7. A parallel analysis is required to determine if a plaintiff has sufficiently stated a *Bivens* action. To sufficiently state a *Bivens* action, a plaintiff must allege "two principal elements: first, a claimant must show he has been deprived of a right secured by the Constitution and the laws of the United States; second, he must show that in depriving him of that right the defendant acted under color of federal law." *Mahoney v. Nat'l Org. for Women,* 681 F.Supp. 129, 132 (D.Conn.1987) (citing *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155–56, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)) (footnote omitted). "For this purpose, the statutory 'under color of law' requirement is equivalent to the constitutional doctrine of state action." *Id.* (citation omitted). Accordingly, a *Bivens* action fails in the absence of proof that the defendant acted under color of federal law, *i.e.,* the federal equivalent of state action. *Id.* The Supreme Court has also "rec-

ognized that a *Bivens* remedy does not lie in two situations: (1) where Congress has provided an equally effective alternative remedy and declared it to be a substitute for recovery under the Constitution, and (2) where, in the absence of affirmative action by Congress, special factors counsel hesitation." *McCarthy v. Madigan,* 503 U.S. 140, 151, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (citing *Carlson v. Green,* 446 U.S. 14, 18–19, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)); *see also Chin v. Bowen,* 833 F.2d 21, 24 n. 5 (2d Cir.1987).

8. In deciding on qualified immunity, "[a] subjective inquiry into an official's personal belief is rejected in favor of an objective analysis of what a reasonable officer in defendant's position would believe." *Cartier v. Lussier,* 955 F.2d 841, 843 (2d Cir.1992). As such, the determination of whether the defendants are

*Rohman v. N.Y. City Transit·Auth.*, 215 F.3d 208, 216 (2d Cir.1999) (citations and internal quotation marks omitted). The issues of whether a plaintiff has asserted a violation of a constitutional right at all, whether that right was clearly established at the time of the defendant's challenged actions, and whether the facts as alleged demonstrate that the defendant's actions were objectively reasonable are pure matters of law. *Martinez v. Simonetti*, 202 F.3d 625, 632 (2d Cir.2000).

## B. The Defendants are Entitled to Qualified Immunity

### 1. Defendant McBride

■ As discussed above, "[a] court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all.... In the event that this threshold determination reveals a possible constitutional violation, [a] qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Wilkinson*, 182 F.3d at 102–03·(citations and internal quotation marks omitted). At the outset, the court finds that Parsons has failed to set forth any facts to establish any deprivation of his constitutional rights by McBride. The court finds that Parsons has failed to make any non-conclusory claim that McBride was directly or personally involved in the alleged deprivation of his constitutional rights. *See* Plaintiff's

entitled to qualified immunity "is not a subjective inquiry into their personal motives." *Zahra v. Town of Southold*, 48 F.3d 674, 687 (2d Cir.1995) (citations omitted); *see also Sound Aircraft Servs., Inc. v. Town of E. Hampton*, 192 F.3d 329, 334 (2d Cir.1999) ("Because the focus of the qualified immunity inquiry is on the objective reasonableness of the defendant's actions, motivation does not come into play." (citation omitted)). Thus, "[a]llegations of an improper subjective intent are irrelevant, if it could have been objectively reasonable for defendants to believe that their actions did not violate clearly established

Memo. of Law in Opp. to Defendants' Motion for Summary Judgment (Dkt. No. 31); Complaint (Dkt. No. 1) at ¶¶ 11–37.

As noted above, McBride was at all relevant times the Chief Probation Officer for the District of Connecticut. *See* Local Rule 9(c)1 Statement (Dkt. No. 28) at ¶ 3. At most, Parsons has established that McBride was the Chief Probation Officer with authority over defendants Visokay and Pond. The Second Circuit has held, under analogous facts in the qualified immunity context, "[t]hat conduct [of serving as a supervisor], if conduct it may be said to be, is obviously not prohibited by federal law." *Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir.2000). The Court of Appeals also noted that "[a] supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue, or if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event." *Id.* (citation and internal quotation marks omitted).

As in *Cuoco*, however, "here there are no allegations and there is no evidence in the record to that effect. For liability to accrue, it is not enough for the defendant simply to be a 'policy maker' at the time unconstitutional events occur." *Id.* Moreover, as the Court of Appeals has held in a section 1983 case against probation officers, McBride "cannot be subjected to [*Bivens* ] damages liability based on respondeat superior or on [her] failure to

law." *Gittens v. LeFevre*, 891 F.2d 38, 42 (2d Cir.1989) (citation omitted). Although a plaintiff may allege an evil or malicious intent on the part of the defendants, "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Cartier*, 955 F.2d at 846 (citation and internal quotation marks omitted); *see also Sound Aircraft*, 192 F.3d at 334 ("Thus, qualified immunity may shield a defendant from liability even when the official conduct is motivated, in part, by hostility to the plaintiff." (citation and internal quotation marks omitted)).

supervise [Visokay and Pond] adequately." *Scotto*, 143 F.3d at 113 (citations omitted).

Accordingly, McBride is entitled to qualified immunity because, even under the Rule 56(c) standard resolving all ambiguities and drawing all inferences in Parsons's favor, McBride's conduct does not violate clearly established constitutional rights of which a reasonable person would have known, where Parsons has failed to allege, or set forth facts to establish, the deprivation of an actual constitutional right at all by defendant McBride. The court therefore finds that summary judgment should be granted in favor of McBride on each of Parsons's claims of constitutional torts on the ground of qualified immunity.

## 2. Defendants Visokay and Pond[9]

### a. Counts 1 and 3

In Counts 1 and 3 of Parsons's complaint, Parsons alleges the violation of his constitutional right to due process of law through the deprivation of his liberty interest in pursuing his lawful avocation as a pilot and of his property interest in his pilot's license. Specifically, Parsons's first and third counts allege a deprivation of his

procedural and substantive due process rights through the imposition of an additional, unfavorable condition on the terms of his supervised release without a hearing or notice, and through interference with his right to secure employment as a pilot by furnishing the FAA with material in order to delay the medical recertification required to renew Parsons's pilot's license.[10]

■ "Procedural due process claims concern the adequacy of the procedures provided by the governmental body for the protection of liberty or property rights of an individual." *Gordon v. Nicoletti*, 84 F.Supp.2d 304, 308 (D.Conn.2000). To state a claim for a violation of procedural due process, "a plaintiff must demonstrate that he or she possesses a constitutionally protected interest in life, liberty, or property, and that state action has deprived him or her of that interest." *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.1994) (citation omitted). Thus, for the plaintiff "to establish a procedural due process violation, [he] must: (1) identify a property right [or liberty interest], (2) establish that governmental action with respect to that

9. The court notes that, like McBride, Parsons has not alleged that Visokay's actions directly deprived Parsons of his constitutional rights. Visokay was, at all relevant times, Pond's direct supervisor, while McBride was the Chief Probation Officer. However, in his affidavit accompanying the instant motion for summary judgment, Visokay's co-defendant Pond states that "Visokay closely monitored the supervision of Thomas C. Parsons' case file during the time he was under the supervision of the United States Probation Officer and at all times was aware of and approved any contacts the USPO has with the FAA concerning Thomas C. Parsons and the issue of medical recertification concerning the pilot's license." Pond Aff. (Dkt. No. 29) at ¶ 16. Pond has made no similar representation regarding McBride. The court notes that a supervisory officer may be held liable for a constitutional tort "if: (1) the supervisory official, after learning of the violation, failed to remedy the wrong; (2) the supervisory official created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (3) the

supervisory official was grossly negligent in managing subordinates who caused the unlawful condition or event." *Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir.1998) (citing *Williams v. Smith*, 781 F.2d 319, 323–24 (2nd Cir.1986)); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir.2000); *Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir.2000). Here there is no allegation or any facts set forth to suggest that Visokay did anything to stop Pond's actions, which form the basis of Parsons's alleged constitutional tort claims. Thus, the court will analyze the liability of Visokay in conjunction with the liability of Pond for purposes of the qualified immunity analysis.

10. As noted above, allegations of the defendants' hostile, injurious, or malicious intent are irrelevant to a determination of whether the defendants are entitled to qualified immunity. *See Sound Aircraft Servs., Inc. v. Town of East Hampton*, 192 F.3d 329, 334 (2d Cir. 1999). As such, the court will not address Parsons's various allegations of the improper motivations for the defendants' actions.

property right [or liberty interest] amounted to a deprivation, and (3) demonstrate that the deprivation occurred without due process." *Rosa R. v. Connelly,* 889 F.2d 435, 438 (2d Cir.1989) (citation omitted). In this context, it is well-settled that the court should " 'examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.' " *Valmonte,* 18 F.3d at 998 (quoting *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989)); *see also Alba v. Ansonia Bd. of Educ.,* 999 F.Supp. 687, 690 (D.Conn.1998) (citing *Narumanchi v. Bd. of Trs. of Conn. State Univ.,* 850 F.2d 70, 72 (2d Cir.1988)).

█ In contrast, "[s]ubstantive due process claims concern limitations on governmental conduct toward an individual regardless of the procedural protections." *Gordon,* 84 F.Supp.2d at 308 (citation omitted). "Substantive due process protects individuals against government action that is arbitrary, . . . conscience-shocking, . . . or oppressive in a constitutional sense, . . . but not against government action that is 'incorrect or ill-advised,' . . . . Moreover, government action might be so arbitrary that it violates substantive due process 'regardless of the fairness of the procedures used.' " *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (citations omitted). "The first step in substantive due process analysis is to identify the constitutional right at stake." *Id.* (citation omitted). The court must then "consider whether the state action . . . was arbitrary in the constitutional sense and therefore violative of substantive due process." *Id.*

█ Parsons does not specify which form of due process claim he is alleging in each count. Regardless, "to establish a violation of either substantive or procedural due process, [a] plaintiff must initially show [he] was deprived of a property or

liberty interest." *Gordon,* 84 F.Supp.2d at 308 (citation omitted). To analyze the defendant's qualified immunity defense, the court must examine (1) whether Parsons's claims can possibly support an allegation of a due process violation through the deprivation of a property or liberty interest, *i.e.,* whether Parsons has alleged the deprivation of a due process right at all, and then, if necessary, examine (2) whether any due process right that the defendants violated was clearly established law at the time of the alleged violation or (3) whether it was objectively reasonable for the defendants to believe that their actions did not violate such law.

Parsons alleges that he acquired a property interest in the pilot's certificate he applied for and received from the FAA and that, by applying for and receiving his pilot's license, he acquired a " 'liberty interest' in pursuing his lawful avocation." Complaint at ¶ 12. Parsons in essence claims that a de facto occupational restriction, imposed on him ultra vires as a condition of his supervised release by the defendants, deprived him of his property and liberty interest in his pilot's license and the pursuit of employment as a pilot using that license without due process of law. The court finds that, as a matter of law, Parsons has failed to demonstrate that the defendants deprived him of any liberty or property interest that he possesses, and therefore Parsons has failed to allege or to set forth facts to establish any violation of his procedural due process rights at all.

The property interests from which procedural due process claims arise "are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Luck v. Mazzone,* 52 F.3d 475, 477 (2d Cir.1995) (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). The court may assume, without deciding, that Parsons acquired a property interest in his pilot's license issued by the FAA ·and that Parsons has therefore alleged the first ele-

ment of a procedural due process violation. *See N.Y. State Trawlers Ass'n v. Jorling,* 16 F.3d 1303, 1311 (2d Cir.1994) ("One's interest in a license may be a property interest cognizable by the Due Process Clause of the Constitution...." (citations omitted)). *But see Sanitation & Recycling Indus., Inc. v. City of N.Y.,* 107 F.3d 985, 995 (2d Cir.1997) (no property interest in a license where the licensing authority has "broad discretion to grant or deny a license application"); *cf. Greenwood v. FAA,* 28 F.3d 971, 976 (9th Cir.1994) (no cognizable property or liberty interest in the renewal of a pilot examiner designation issued by the FAA). Parsons, however, has not alleged or set forth facts to establish that he was deprived of his license and therefore his property interest in that license. Indeed, at oral argument, Parsons indicated that his license had never been revoked, by virtue of the defendants' actions or otherwise. Moreover, the defendants state in their Local Rule 9(c)1 statement, and Parsons does not challenge,[11] that Parsons was granted the medical recertification needed to renew his pilot's license and that Parsons's pilot's license was never revoked. *See* Local Rule 9(c)1 Statement (Dkt.28) at ¶¶ 30–31; *see also* Complaint (Dkt. No. 1) (containing no allegation that Parsons's pilot's license was actually revoked). "Although it is true that a license essential to the pursuit of one's livelihood, once issued by the state, cannot be revoked without due process," here Parsons's license was never revoked. *West Farms Assocs. v. State Traffic Comm'n of the State of Conn.,* 951 F.2d 469, 473 (2d Cir.1991) (citation omitted). Parsons, accordingly, cannot set forth facts to show that he was deprived of his property interest in his license and thus cannot establish the second element required for a procedural due process violation. *See Thomas v. City of N.Y.,* 143 F.3d 31, 35 (2d Cir.1998) ("In the instant case, not one of plaintiffs' licenses has been denied. As a result, plaintiffs have not, as yet, suffered any harm to their procedural due process rights.").

Parsons also claims a liberty interest in the pursuit of his livelihood as a pilot. Courts have recognized cognizable procedural due process claims by "plaintiffs denied licenses required for pursuing a particular occupation," who "have a liberty interest in earning a livelihood and are normally not required to show an entitlement to the license they seek in order to state a claim; their liberty interest is impaired if their license application is arbitrarily denied." *RRI Realty Corp. v. Inc. Village of Southampton,* 870 F.2d 911, 918 n. 4 (2d Cir.1989) (citation omitted); *see also Valmonte,* 18 F.3d at 1003 (plaintiff "does have a legitimate interest in pursuing her chosen occupation") (citing *Greene,* 360 U.S. at 492, 79 S.Ct. 1400). Indeed, Parsons may also claim a violation of his substantive due process right to follow the profession of his choice. The Second Circuit has held that "[t]he right to follow a chosen profession is a property interest protected by the Fifth and Fourteenth Amendments." *Lange–Kessler v. Dep't of Educ. of the State of N.Y.,* 109 F.3d 137,

---

11. Although Parsons did not file a separate Local Rule 9(c)2 Statement, he did incorporate the functional equivalent of such a document into his Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment. *See* Plaintiff's Memo. of Law in Opp. to Defendants' Motion for Summary Judgment (Dkt. No. 31) at 4–7 ("Affidavit of David Pond; Material Facts in Dispute"). Local Rule of Civil Procedure 9(c)(2) requires the Local Rule 9(c)2 Statement to "state[ ] in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 9(c)1 Statement whether each of the facts asserted by the moving party is admitted or denied." The court finds that Parsons has effectively challenged statements in Pond's Affidavit [Dkt. No. 29] which essentially overlap or exactly track statements in the defendants' Local Rule 9(c)1 Statement [Dkt. No. 28]. As such, the court finds that this section of Parsons's memorandum effectively puts forth the statements in the Local Rule 9(c)1 Statement which Parsons denies as well as the "issue[s] of material fact as to which it is contended there is a genuine issue to be tried." Local R. 9(c)(2).

140 (2d Cir.1997) (citing *Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), and *Schware v. Bd. of Bar Exam'rs,* 353 U.S. 232, 238–39, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957)). In doing so, the Court of Appeals followed the Supreme Court's teaching that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." *Greene,* 360 U.S. at 492, 79 S.Ct. 1400 (citations omitted). This line of cases dictates that "[a] state deprives a candidate for licensure of substantive due process if the state imposes licensure requirements that have no rational connection with the candidate's fitness or capacity to practice in the profession." *Karan v. Adams,* 807 F.Supp. 900, 907 (D.Conn.1992) (citing *Schware,* 353 U.S. at 239, 77 S.Ct. 752).

However, "[d]ue process protects—it does not create—those interests initially recognized and protected by state [or federal] law . . . . . . Hence, a liberty interest is implicated only when a recognized interest has been altered or extinguished." *Asbestec Constr. Servs., Inc. v. U.S. EPA,* 849 F.2d 765, 769 (2d Cir.1988) (citations and internal quotation marks omitted). Here, assuming without deciding that Parsons does have a liberty and a property interest in the pursuit of his livelihood as a pilot, Parsons has failed to demonstrate the deprivation or extinguishment of those interests and so has failed to demonstrate the second element of either a procedural or substantive due process claim, *i.e.,* that the defendants have deprived him of a protected liberty interest.[12] Parsons has thus failed to allege or to set forth facts to establish any violation of his procedural due process rights by the defendants with regard to his right to pursue a career as a pilot.

Parsons might also claim that the defendants deprived him of a particular offer of employment as a pilot by causing a delay in the issuance of Parsons's medical recertification. *See* Complaint (Dkt. No. 1) at ¶¶ 41–43. However, "[a] plaintiff must have a property interest in a benefit that is 'more than an abstract need or desire for it. . . . [He] must, instead, have a legitimate claim of entitlement to it' under state or federal law in order to state a" procedural due process claim. *Finley v. Giacobbe,* 79 F.3d 1285, 1296 (2d Cir.1996) (citation omitted). Furthermore, the Due Process Clause secures "the liberty to pursue a calling or occupation, and not the right to a specific job." *Wroblewski v. City of Washburn,* 965 F.2d 452, 455 (7th Cir.1992) (citations omitted); *see also Piecknick v. Comm. of Penn.,* 36 F.3d 1250, 1259 (3d Cir.1994) (" '[T]he Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation. State actions that exclude a person from one particular job are not actionable in suits . . . brought directly under the due process clause.' " (quoting *Bernard v. United Township High Sch. Dist. No. 30,* 5 F.3d 1090, 1092 (7th Cir.1993))). Here, Parsons has demonstrated no legitimate claim of entitlement to a position as a pilot with his prospective private employer which would give rise to a property or liberty interest protected by the Due Process Clause. As such, Parsons has failed to allege or set forth facts to establish the first element necessary for either a procedural or substantive due process claim.

Moreover, Parsons cannot claim a property interest in the procedural protections that govern the modification of a condition of supervised release. *See* 18 U.S.C. §§ 3563(c) & 3583(e); Fed. R.Crim.P. 32.1(b). "The issue of what constitutes a substantive property interest is

12. The court also notes that Parsons does not challenge the FAA's licensing procedure as failing to meet "[t]he rational-relationship test mandated by *Schware*." *See Karan v. Adams,*

807 F.Supp. 900, 907 (D.Conn.1992) (citations omitted). Of course, such a claim would not lie against these defendants.

analytically distinct from the issue of what procedures must be followed if such interest is to be taken away." *Furlong v. Shalala*, 156 F.3d 384, 395 (2d Cir.1998) (citation omitted). As such, "[t]he deprivation of a procedural right to be heard, however, is not actionable when there is no protected right at stake." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir.1994) (citations omitted). More specifically, the Second Circuit has held that "the Due Process Clause does not protect against the deprivation of state procedural rights." *West Farms*, 951 F.2d at 472 (citations omitted). This is because, in part, procedural rules are "universal benefits [that] are not property interests" of any one citizen. *Id.* Furthermore, "[a]mple precedent establishes that a state rule of criminal procedure ... does not create a liberty interest that is entitled to protection under the federal Constitution. As the Supreme Court has stated, '[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.'" *Watson v. City of N.Y.*, 92 F.3d 31, 37–38 (2d Cir.1996) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), and citing, *inter alia, Pugliese v. Nelson*, 617 F.2d 916, 924 (2d Cir.1980) ("Although a Due Process Clause liberty interest may be grounded in state law that places substantive limits on the authority of state officials, no comparable entitlement can derive from a statute that merely establishes procedural requirements." (citation and internal quotation marks omitted))); *see also Brandon v. Dist. of Columbia Bd. of Parole*, 823 F.2d 644, 648 (D.C.Cir.1987) ("The Due Process Clause ensures that the government does not arbitrarily deprive an individual of liberty for requiring that any deprivation be effected pursuant to constitutionally adequate procedures. An essential principle of due process is that a deprivation of liberty 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' ... This requirement for 'some kind of a hearing,' ... highlights the untenability of Brandon's claim. If, as Brandon argues, a right to a parole hearing is a liberty interest, and since due process accords the right to a predeprivation hearing, then Brandon would have us interpret the Due Process Clause to mean that the Board may not deprive him of his parole hearing without providing him a hearing. This circular result demonstrates the illogic of attempting to locate a separated protected liberty interest in procedural rules created by governmental bodies." (citations omitted)).

The court finds that these precedents are equally applicable to federal procedural rules and holds that Parsons has no cognizable property or liberty interest in having the defendants follow the procedures established by federal law and the Probation Office's rules and regulations, unless the defendants otherwise deprived him of a property or liberty interest in the absence of those procedures. *See Rowland v. Hildreth*, No. 92 Civ. 6140, 1993 WL 287646, at *15 (S.D.N.Y. July 27, 1993) (" '[F]ederal regulations providing for an administrative remedy procedure do not in and of themselves create a liberty interest in access to that procedure.'" (quoting *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991))).

Accordingly, the court finds that Parsons has not "alleged the deprivation of an actual constitutional right at all." *Wilson*, 526 U.S. at 609, 119 S.Ct. 1692 (citation and internal quotations marks omitted). Thus, because Parsons does not allege or set forth facts to establish a cognizable federal claim for violation of his procedural or substantive due process, the defendants are entitled to qualified immunity from Parsons's claims in Counts 1 and 3 of his complaint. *See X–Men*, 196 F.3d at 66.

### b. Count 2

Count 2 of Parsons's complaint alleges that the defendants violated Parsons's constitutional right to due process and to privacy by forwarding to the FAA testimony

from a criminal trial in which witnesses testified about Parsons. The court construes this count in several ways.

First, if Parsons intended to allege a violation of his liberty interest in his reputation resulting from the defendants's release of the trial transcripts to the FAA, such an allegation would fail to allege the violation of a cognizable federal right. "[S]imple damage to reputation does not give rise to a liberty interest claim; rather, the damage must be accompanied by some significant deprivation, such as dismissal from government employment.... This test for liberty interest claims stemming from alleged government defamation is commonly referred to as the 'stigma plus' test.... Several circuits have held that the deprivation of a property interest satisfies the 'plus' prong of stigma plus." *Greenwood v. N.Y.*, 163 F.3d 119, 124 (2d Cir.1998) (citations and internal quotation marks omitted). Even assuming that the defendants' actions would implicate a protected liberty interest in Parsons's reputation, Parsons has failed to demonstrate any property interest of which he has been deprived by the defendants' action. As noted above, Parsons's pilot's license was never revoked and he received medical recertification from the FAA. Thus, the court finds that Parsons has not "alleged the deprivation of an actual constitutional right at all." *Wilson*, 526 U.S. at 609, 119 S.Ct. 1692 (citation and internal quotations marks omitted).

Second, Parsons may be alleging a violation of his right to privacy. The Second Circuit has held that "[t]here is ... a recognized constitutional right to privacy in personal information," such that the Constitution "protect[s] 'the individual interest in avoiding disclosure of personal matters.'" *Doe v. City of N.Y.*, 15 F.3d 264, 267 (2d Cir.1994) (quoting *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)). "More precisely, this right to privacy can be characterized as a right to 'confidentiality,' to distinguish it from the right to autonomy and independence in decision-making for personal matters also recognized in *Whalen* .... This right to confidentiality was recognized in both *Barry* [*v. City of N.Y.*, 712 F.2d 1554 (2d Cir.1983) ] and *Eisenbud* [*v. Suffolk County*, 841 F.2d 42 (2d Cir.1988) ] in the context of financial disclosures, but the analysis employed in both is appropriate for the evaluation of a violation of a right to confidentiality regarding other types of personal information, including information relating to the status of one's health." *Id.* (citations omitted); *see also Powell v. Schriver*, 175 F.3d 107, 111–12 (2d Cir. 1999).

Construing Parsons's complaint liberally, the court finds that the interest at stake in this claim would be Parsons's privacy interest in information that the Probation Office possessed about him. However, the Court of Appeals in *Doe v. City of N.Y.* also noted that "[c]ertainly, there is no question that an individual cannot expect to have a constitutionally protected privacy interest in matters of public record" because "[t]he constitutional right to privacy does not extend to matters of public record." 15 F.3d at 266, 268 (citations omitted). Moreover, the Second Circuit in *Doe v. City of N.Y.* noted that "[i]t is possible, of course, that Doe knew when entering into the Conciliation Agreement that the agreement would become a matter of public record, despite the confidentiality clause in the settlement, and that he thereby waived his privacy interest." *Id.* at 269 (citation omitted).

Parsons argues that his privacy interest arises out of the regulations governing the disclosure of information from the Probation Office's file on persons on supervised release.[13] The defendants

---

13. 28 C.F.R. § 2.37 provides:
   (a) Information concerning a parolee under the Commission's supervision may be disclosed to a person or persons who may be exposed to harm through contact with that particular parolee if such disclosure is deemed to be reasonably necessary to give notice that such danger exists.

claim that the trial transcripts released to the FAA were matters of public record and, as such, the defendants were not required to notify Parsons of the FAA's request for the material or the defendants' release of the materials.

Here, the court finds that, even if Parsons has a privacy interest in the nondisclosure of this information to agencies such as the FAA, Parsons waived any such right by signing a form entitled "Conditions of Probation and Supervised Release." *See* Local Rule 9(c)1 Statement (Dkt. No. 28), Ex. F. This form included the following provision: "As directed by the probation officer, you shall notify third parties of risks that may be occasioned by your criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm your compliance with such notification requirement." *Id.* at ¶ 13. This third-party risk notification provision comports with the duties of federal probation officers supervising defendants such as Parsons. *See* Memo. of Law in Support of Defendants' Motion for Summary Judgment (Dkt. No. 27), Ex. I; *see generally United States v. Doe*, 79 F.3d 1309 (2d Cir.1996).

The court finds that the disclosures of which Parsons complains are not prohibited by federal law, given Parsons's waiver

of any privacy interest he had in the materials by signing the supervised release conditions form.[14] *See, e.g., Powell*, 175 F.3d at 112 n. 1 ("As is the case with HIV status, the right to maintain the confidentiality of one's transsexualism may be subject to waiver." (citation omitted)). Moreover, the plaintiff has not alleged or set forth facts to establish that he did not waive his right to privacy by signing his supervised release conditions form. The court recognizes that "a waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege," that "the waiver of or acquiescence in the loss of any fundamental right can neither be presumed nor may it be lightly inferred," and that "courts must indulge every reasonable presumption against waiver of fundamental constitutional rights." *Doe v. Marsh,* 105 F.3d 106, 111 (2d Cir.1997) (citations and internal quotation marks omitted).

Here, Parsons signed a waiver. He has not demonstrated that he did not waive his right to privacy by signing a supervised release conditions form, as part of a court-ordered sentence, which explicitly provided that Parsons "shall permit the probation officer to make such notifications and to confirm your compliance with such notification requirement." The court rejects Parsons's argument that, because of the inclusion of "[a]s directed by the probation

---

(b) Information concerning parolees may be released by a Chief U.S. Probation Officer to a law enforcement agency (1) as deemed appropriate for the protection of the public or the enforcement of the conditions of parole or (2) pursuant to a request under 18 U.S.C. § 4203(e).

(c) Information deemed to be "public sector" information may be disclosed to third parties without the consent of the file subject. Public sector information encompasses the following:

(1) Name;
(2) Register number;
(3) Offense of conviction;
(4) Past and current places of incarceration;
(5) Age;
(6) Sentence data on the Bureau of Prisons sentence computation record (BP–5);

(7) Date(s) of parole and parole revocation hearings; and
(8) The decision(s) rendered by the Commission following a parole or parole revocation proceeding, including the dates of continuances and parole dates. An inmate's designated future place of incarceration is not public information.

14. Moreover, any claim by Parsons that he is entitled to relief because the defendants violated their own rules is unavailing. As noted above at 217–18, Parsons does not have a cognizable interest protected by due process ensuring that government officials follow their own rules or procedures, unless their failure to do so deprived him of a protected property or liberty interest arising from a source other than those procedural protections themselves.

officer" in the third-party notification provision on the form entitled "Conditions of Probation and Supervised Release," Parsons's signing the supervised release conditions form cannot constitute a waiver of his right to privacy through consent to a probation officer making third-party notifications. *See* Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Dkt. No. 30) at 15–17. Parsons argues that "since the [supervised release conditions form] itself was not intended by the Probation Department to make notification automatic, [Parsons's] signing of the Form could not constitute an agreement to notification." *Id.* at 16–17 (quoting *United States v. Doe*, 79 F.3d at 1319). The holding in *United States v. Doe*, that this provision on supervised release condition forms does not make notification by the probationer automatic, is distinguishable from the present case. *See United States v. Doe*, 79 F.3d at 1317–19. In *United States v. Doe*, the probationer was challenging a requirement that the probationer himself automatically notify all of his accounting clients of his conviction, and the Court of Appeals found that, because of the inclusion of the clause "[a]s directed by the probation officer, ... [t]he language of this provision does not state that a notification requirement is imposed automatically." *Id.* at 1317–18. Here, in contrast, the defendants argue that, while notification is not automatic, the defendant probation officers were authorized, by 28 C.F.R. § 2.37(a) and by Parsons's consent in signing the supervised release conditions form, to make third-party notifications and disclosures if the defendants determined that disclosure was "reasonably necessary." Memo. of Law in Support of Defendants' Motion for Summary Judgment (Dkt. No. 27) at 8.

The discussion of the Court of Appeals in *United States v. Doe* makes clear that the language "[a]s directed by the probation officer" modifies the circumstances in which a probationer must himself notify third parties of his conviction, not when a probation officer can himself make third-party notifications. *United States v. Doe*, 79 F.3d at 1318. Thus, the focus of the *United States v. Doe* decision was whether a probationer can be required to notify third parties himself of his conviction under certain circumstances, as opposed to the present issue of whether the language in the supervised release conditions form authorizes probation officers to make third-party notifications based on their judgment that it was reasonably necessary. The court finds that Parsons waived his right to privacy by signing the supervised release conditions form, and, as such, the plaintiff has not alleged or set forth facts to establish the deprivation of a constitutional right at all.[15] Therefore, the defendants are entitled to qualified immunity on Count 2.

### c. Count 5

In Count 5 of the complaint, Parsons alleges that defendant Pond acted with malice in requiring that Parsons attend weekly sessions with Dr. Jeremy August, a licensed psychiatrist with whom Parsons was attending sessions at his own expense pursuant to the conditions of his supervised release under the terms of Parsons's sentence. Parsons alleges that the defendants knew that Parsons could not afford such frequent sessions and that, as such, this requirement amounted to an illegal fine.

---

**15.** Alternatively, the court finds that the defendants' actions were objectively reasonable "in light of the legal rules that were clearly established at the time [the actions were] taken." *X–Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65–66 (2d Cir.1999) (citations and internal quotation marks omitted). Given the discretion afforded probation officers under 28 C.F.R. § 2.37(a) to determine if disclosure is "reasonably necessary," the objective reasonableness test would be met here, where "officers of reasonable competence could disagree on the legality of the defendant's actions." *Rohman v. N.Y. Transit Auth.*, 215 F.3d 208, 216 (2d Cir.2000) (citations and internal quotation marks omitted).

Parsons does not appear to allege a cognizable constitutional violation under Count 5.[16] The court notes that, even if Parsons were alleging a constitutional tort, the facts alleged would not constitute a violation of the Excessive Fines Clause of the Eighth Amendment, since the money appears to have been paid to Dr. August and not the government. *See United States v. Certain Real Property & Premises Known as 38 Whalers Cove Drive*, 954 F.2d 29, 39 (2d Cir.1992) ("As to the Excessive Fines Clause, the Supreme Court has provided no guidance, except to observe that fines must be closely scrutinized because they benefit the government."). It is also unclear what cognizable property or liberty interest Parsons could allege that the defendants have deprived him of without due process of law in order to make out a procedural due process claim.

Moreover, even assuming Parsons may have a constitutionally-protected property interest in his assets which the weekly psychiatric visits required him to draw upon, the court notes that Parsons has alleged no violation of any due process rights he had to protect that interest. Indeed, the defendants are alleged only to have aggressively enforced the court-ordered psychiatric counseling imposed upon Parsons by the sentencing court as a condition of his supervised release under his sentence. *See* Local Rule 9(c)1 Statement (Dkt. No. 28), Ex. F. Parsons signed a form entitled "Conditions of Probation and Supervised Release," which included the "special condition ordered by the Court" that "Defendant shall obtain such psychological and psychiatric counseling and therapy under the guidance and supervision of U.S. Probation Officer." *Id.* Parsons has alleged only that the defendants were enforcing this court-ordered condition pursuant to 18 U.S.C. §§ 3563(b)(9) & 3583(d), albeit to an extent which he feels became unduly financially burdensome upon him. If Parsons wanted relief from this condition, Parsons, as a person under federal supervised release, had recourse to the sentencing court to petition for a modification of the conditions of his supervised release pursuant to 18 U.S.C. §§ 3563(c) & 3583(e)(2) and Fed.R.Crim.P. 32.1(b). *See* Fed.R.Crim.P. 32.1(b) ("A hearing and assistance of counsel are required before the terms or conditions of probation or supervised release can be modified, unless the relief to be granted to the person on probation or supervised release *upon the person's request* or the court's own motion is favorable to the person, and the attorney for the government, after having been given notice of the proposed relief and a reasonable opportunity to object, has not objected." (emphasis added)). Accordingly, the court finds that Parsons has failed to allege a cognizable federal claim in Count 5 for violation of his constitutional rights, and the defendants are entitled to qualified immunity on Count 5.[17]

## C. Section 1982 Claim

As noted above, Parsons's complaint [Dkt. No. 1] also appears to allege a cause of action against the defendants under 42 U.S.C. § 1982. *See* Complaint at ¶ 2. "Generally speaking, 42 U.S.C. § 1982 prohibits private racial discrimination in the

16. In an earlier discussion, the court held that Parsons had failed to get past the first prong of the qualified analysis as to McBride because he failed to allege sufficient direct or personal involvement of McBride in any alleged constitutional torts. *See supra* at 213. However, if Parsons does intend for Count 5 to allege a constitutional tort, and if Parsons's allegations in Count 5 regarding McBride's discussion with Parsons about his ability to afford weekly psychiatric sessions would be sufficient to allege her involvement in any constitutional violation, McBride would be entitled to qualified immunity, along with Pond and Visokay, for the reasons that follow.

17. If, however, Parsons intends Count 5 to state a state law claim of some kind, the court will exercise its discretion to decline to maintain supplemental jurisdiction over Count 5 because the court has granted summary judgment for the defendants on the ground of qualified immunity on all of Parsons's federal constitutional claims. *See* 28 U.S.C. § 1367(c)(3).

sale or rental of real or personal property." *Brown v. Middaugh,* 41 F.Supp.2d 172, 193 (N.D.N.Y.1999) (citation omitted). It is settled law that a claim under § 1982 must allege "an element of racial animus or discrimination." *Vertical Broadcasting, Inc. v. Town of Southampton,* 84 F.Supp.2d 379, 389 (E.D.N.Y.2000); *see also Rivera v. United States,* 928 F.2d 592, 608 (2d Cir.1991) (section 1982 claims "require proof of intentional discrimination" (citations omitted)). For purposes of dismissal under Fed.R.Civ.P. 12(b)(6), the court is bound to accept as true all factual allegations in the complaint and draw all inferences from those allegations in the light most favorable to the plaintiff. *See Thomas v. City of N.Y.,* 143 F.3d 31, 37 (2d Cir.1998). Even where the defendants have not moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), "district courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee, just as the Court of Appeals may dismiss frivolous matters in like circumstances." *Fitzgerald v. First E. Seventh Street Tenants Corp.,* 221 F.3d 362, 364 (2d Cir.2000); *see also Fitzgerald v. Feinberg,* No. 98 CIV 8885 RWS, 82714, 1999 WL 619584, at *5 (S.D.N.Y. Aug.16, 1999) ("[T]he Court has discretion to dismiss claims *sua sponte* pursuant to Rule 12(b)(6), particularly where it is clear that a plaintiff could not have prevailed on the facts as alleged in the complaint." (citations omitted)). Parsons's complaint and his other papers contain no allegations of racial animus or discrimination, nor can the court draw any inference of racial discrimination from Parsons's filings. Even granting the deference due to Parsons's *pro se* status, the court finds that Parsons has failed to state any cause of action under 42 U.S.C. § 1982. The court dismisses Parsons's section 1982 claim, with leave to replead within twenty (20) days if there is a factual basis to do so.

**D. State Law Claims (Counts 4, 6 and 7)**

Counts 4, 6 and 7 of Parsons's complaint raise state law claims of fraudulent misrepresentation, deceit, and intentional infliction of emotional distress. Because the court has granted summary judgment for the defendants on the ground of qualified immunity on all of Parsons's federal constitutional claims and has dismissed Parsons's section 1982 claim, the court will exercise its discretion to decline to maintain supplemental jurisdiction over Parsons's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—... (3) the district court has dismissed all claims over which it has original jurisdiction....").

## V. CONCLUSION

For the foregoing reasons, the court finds that the defendants have proven that they are entitled to qualified immunity from the constitutional tort claims alleged in Parsons's complaint. The court therefore grants summary judgment for the defendants on Counts 1, 2, 3, and 5. Moreover, the court dismisses Parsons's claim under 42 U.S.C. § 1982 with leave to replead within twenty (20) days if there is a factual basis to do so.[18] Because the court has dismissed or granted summary judgment for the defendants on Parsons's federal claims, the court declines to exercise supplemental jurisdiction over the remaining state law claims in Counts 4, 6, and 7. As such, the defendant's Motion for Summary Judgment [Dkt. No. 26] is granted. The clerk is directed to close the case.

**SO ORDERED.**

---

**18.** Any further pleading must have a reasonable basis in law and fact; if it does not, the signer of the pleading is subject to sanctions. Fed.R.Civ.P. 11.